Case number 231793, Julie A. Sue v. F.W. Webb Company. At this time, would counsel for the appellant please introduce herself on the record to begin. May it please the Court. Rachel Cowen on behalf of the appellant, F.W. Webb. And, Your Honor, with your permission, I'd like to reserve three minutes for rebuttal. You may. Thank you. The District Court's grant of summary judgment should be reversed and remanded for a trial in this case. The Court's decision was flawed in several material respects. First, the Court mechanically applied the outdated production versus staff dichotomy to determine that the ISR's primary duty was not related to Webb's management or general business operations. In fact, the lower court viewed this analysis as dispositive, and that was error. In 2004, the Secretary of Labor revised the regulations setting forth the meaning of directly related to management or general business operation to specifically diminish the relevance and importance of this dichotomy. In fact, if you look to the regulations, the prior regulation prior to 2004, in defining what is directly related to the management operations and general business, the regulation referred to activities relating to the administrative operations of a business as distinguished from production or in a retail or service establishment sales work. One thing puzzling me here. We very recently specifically addressed and laid out how you decide a case like this and how we review a board decision like this in our UNITEL opinion. And then your brief, as I read it, I don't think even mentions it, much less doesn't apply the standard. And so, of course, the Apolli and the Apolli's brief went to town on that and went through the whole UNITEL analysis. And then I get to your brief, and I still don't see a UNITEL. It seems like you're running as fast as you can in every possible way to get away from the way that we said you're supposed to look at one of these cases. Your Honor, I would actually embrace the analysis in UNITEL, and let me address it this way. Has something changed about the case since your brief was done? I just don't run very fast, so I'm going to address it right now. I'm not running away from it. So, Your Honor, look, in UNITEL, as a preliminary matter, the court reversed and remanded that case for a trial on the merits. It was not a case that declared the employees in that case non-exempt. And I think that's an important procedural distinction. But how we go about and apply a two-part test here, a relationship, relational analysis, you identify the business purpose, which would seem to be here selling goods, and then you identify the primary duty, which would seem to be helping to sell the goods. In UNITEL, this court acknowledged that the relational analysis and this dichotomy is not relevant to every case. It has to be relevant and useful to the question in the case, and that's consistent with the 2004 amendments to the regulation. In fact, the Secretary de-emphasized the use of this test, and the comments to the rule state that it's not to be used in every case, and it should only be used when the work falls squarely on the production side. Here, in light of that regulatory change, it wasn't useful in this case, and I would actually quote to you, back from UNITEL, the question that this court says has to be asked. In a case where the production versus staff dichotomy might be useful, and again, it's only to be a factor, this court said, the question to be asked is as follows. By business, we mean production or provision of the very product or service that the employer or its customers offer to the public. And that this second prong is not met if the employee produces the product or provides the service that the company is in business to provide. That is not the question that the court below asked in this case. In this case, the court determined that there was a special role for wholesalers, and decided that our business, FW Web, is in the business of producing sales. That is a definition that only a lawyer could come up with, because if we were in a conversation in a casual setting, and you asked me what does FW Web do, and I said it produces sales, that would tell you nothing. But if you look at our logo, displayed at the Boston Red Sox Stadium, you would see a plumbing valve. We are a wholesale supplier of plumbing, electrical, HVAC equipment, and other products that are used in the construction industry. By that, doesn't that mean you don't make plumbing equipment? You buy it from the manufacturers, and then you turn around and resell it. And that's what your business does. That's right, and that's why this analysis... And these individuals are the ones who resell it. Well, let me say first... Correct me if I'm misunderstanding what they do. I think you understand what FW Web does, but I think it's a little bit more nuanced and complicated than we simply just resell it. One, again, I think that when the district court posed the question, the question should have been, do these individuals make the plumbing equipment, the electrical wiring, or the valves, or the HVAC equipment? And the answer to that is no. And at that point, it should have been obvious that this analysis... Your company doesn't make it. Yeah, but the question... To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business as distinguished, for example, from working on a manufacturing production line. That's the way the regulation reads today. And so when we say manufacturing production line, that evokes Lucy and Ethel pulling chocolate off the conveyor belt, and that's not what these people did. So let me understand. You're saying any company that doesn't manufacture, in other words, all wholesalers in the United States, all their employees are exempt? No. What I'm saying is that you're required to look to the duties and not become tethered to this outdated dichotomy that even the director or that the Secretary of Labor has announced is no longer important in all cases. We're talking about what your client calls ISRs. Yes. And as I understand it, ISRs are inside sales reps. That is what the acronym stands for, and they do much more than simply book sales, and that's really what gets us into John Alden. At the end of the year when they gather for their bonuses, what data is looked at? Well, if you look at the actual reviews, I know the trial court focused on the scorecard for the sales results, but it also talks about did they use good judgment, did they problem solve, were they effective in negotiating, and so all of these skills were actually looked at. And I do want to point back to some of the record evidence that I think is important in this case. We produced declarations from ten ISRs who said their primary duty is not to simply place sales, that 95% of their duties in most of the declarations was to inform, advise, and assist customers to provide this concierge-level service. And they gave clear examples, and I would note that some of those declarants were degreed engineers, and they earned up to $350,000 a year in some cases. So they weren't being paid on commissions like you're thinking. We had 350 outside salespeople. Could you say all of that of the fellow that I meet with at my car dealer? If I go to buy a car, he's good at selling. He finds out what my needs are, gives me some advice on the type of thing, explains some of the cars, gives me all sorts of advice and counsels me through the process. The aim of everything he's doing is to sell me the car. Not to improve the business and how the business strategically is going to operate at a management level. No, again, the regulation also expressly states that marketing and advertising personnel can be exempt. That's also their job. And, Your Honor, I don't think that here the ISRs were exclusively just booking sales. Keep in mind. So does everybody in advertising is exempt? Well, the regulation gives an example expressly of the type of people who are performing operations. And, again, exempt is a multi-tiered question. The question that we're only here to answer is whether one element of that has been satisfied, and that is whether the work they perform is directly related to management or general business operations. We still have to pay the salary. They still have to exercise judgment. And so it doesn't mean they're exempt. It just means we've satisfied the second prompt. But you could certainly hire someone who, like an outside consultant like McKinsey, would come up with a marketing plan and they're in charge of deciding which sales reps, how many they'll be, what they'll do. Sure, that person could be exempt. But I don't think by marketing I mean the person who is out on the floor selling the products of a company, all of whose revenue comes from selling products. Well, our people aren't on the floor selling products either. Our people are in an office. And I want to be clear. Keep in mind, a substantial portion is helping our customers prepare bids, competitive bids. There is no guarantee that our customers are going to be the successful bidder or that any sale will occur at all. They're not designing what the bid specification would be. Well, you as the customer, the municipality wants to build a power plant, decides I want a power plant. No, no, what the criterion for evaluating a bid is. They're not involved in that, are they? They are. That's directly in the record. They're designing for the company what the requirements for a bid will be? No, no, no. The Boston says we want to build a power plant. They go to Bechtel, they say we need a power plant. Bechtel says we want to build a power plant. Here is the specifications. And then Bechtel comes to us and says what kinds of valves, what kinds of parts, what kinds of equipment do I need? And we are consulting with them, and that's far different than the car. Does your company charge for that? No, because we're not selling that service. And that would actually be a different inquiry, because that's not the service we're selling. You're saying their primary duty is to do something charitable for customers? No, their primary duty is to do precisely what the marketing representative and John Alden did, which is to provide support to enhance the sales experience. Aren't they doing? Take a sales rep for a pharmaceutical company. They call on a doctor, and they advise the doctor about what new drugs there are, what symptoms there are, treatment protocols, everything. They're exempt. They don't charge for any of that. But the reason they're doing it? The Supreme Court says they're exempt. Obviously, that case turned on whether they were outside sales, but there are cases from the circuits before it went to the Supreme Court that also, because they don't book the sale, some of the cases actually did grant the administrative exemption to those individuals. Right. If you're looking at the primary duty, don't we look at things that the company charges for and realize that the other stuff that they're doing is aimed at facilitating that goal? So you advise a customer, you help them with their bid, all towards the end of knowing the only way you're going to get any revenue is if you sell the product. Hence, you're doing all these things to try to sell the product. That seems to be the common sense of a wholesaler. Yeah. I see my time has almost expired. May I answer your question, Your Honor? You may. All right. First, I would say that I would look to guidance the same way this court did in the cash case. The cash case actually referred to 29 CFR 541-203B, the financial services industry. Your financial advisor is exempt according to this court's precedent in the citations in cash. It distinguishes between those financial service representatives who simply book sales and those who, quote, analyze information regarding the customer's income, assets, investments, or debts, determining which financial products best meet the customer's needs and financial circumstances, advising the customer regarding the advantages and disadvantages of different financial products, and marketing, servicing, or promoting the employer's financial products. That's exempt work according to the regulations. This court in cash embraced the analogy to that regulation in determining that Mr. Cash was exempt. And again, I would point the court back to John Alden because all that we are talking about in this case is whether or not the work performed relates to management or general business operations. That regulation expressly excludes only retail sales. It does not, by definition, exclude anything else. And the Secretary's comments to the final regulations make clear, citing to John Alden, that sales can be operational and it does not matter if the goal is to sell. And this is the quote from John Alden. Disseminating information to the marketplace, understanding customers and competitors, and gathering information to be used in putting together proposals and packages is directly related to operations and at the heart of John Alden's success. And so, Your Honor, I don't believe the mere fact that we don't make the product is the relevant inquiry because what you'd be advocating then is tomorrow if we put a factory in the back of the parking lot and said we're going to private label two lines and put them in the catalog, that would change the outcome. There is no absolute carve-out for wholesalers. There is only a carve-out for retailers. And beyond that, it turns to the duties, which John Alden says in this case are exempt. Thank you. Thank you. Thank you, Counsel. At this time, if Counsel for the Appellee would please introduce himself for the record. Good morning. May it please the Court. Joseph Abood for the Acting Secretary of Labor. Applying the Department's current regulations in this Court's case law to the present record, summary judgment for the Acting Secretary is warranted because no reasonable fact finder could conclude that the inside sales representative's primary duty directly relates to the management or general business operations of the FWWeb company. As this Court noted in Unitil and reaffirmed in the Marcus decision, this primary duty test benefits from a relational analysis, comparing the employee's work to the employer's business purpose and their business functions. Where the employee's primary duty is to perform the very service that the business provides to the public, that employee cannot satisfy that. Can you help me with the Marcus case when they talked about the, is it chess tournaments? Bridge tournament. Bridge tournament. There was a certain category of persons who were treated as exempt, who kind of organized the bridge tournaments? Sure. I can help you with that, and I think it's helpful to look at the kind of the lower level employees there and the structure because that really helps us get at. Just walk me through the different tiers and how we did it in Marcus and then how you think that maps on to these duties. Gladly, Your Honor. So at the lowest level were the tournament directors, who were found to be non-exempt core production employees by this Court. They refereed the bridge games. They kind of applied the rules that had been written by others, and they were kind of doing the daily routine game refereeing. Above them were national tournament directors and associate national tournament directors, which this Court also found to be non-exempt core production employees. They were also refereeing games at these particular tournaments, and they also had additional duties at these particular tournaments of supervising the lower level staff, and they wrote the regulations and rules that applied to the tournaments. But because their duties were all geared towards putting on the tournament, which was the core business function of the league, this Court found that those kind of ancillary quasi-administrative duties all went towards that productive function. And you're saying the ISRs are just like those people? Exactly, Your Honor. The next level, which were found to be exempt administrators, were the field supervisors and area managers. They also did refereeing, and they were working at these tournaments, but they had duties that went beyond any particular tournament that they were assigned to. Those duties were ancillary to refereeing games and applying the rules. They were working with the customers that kind of sponsored the events. They were thinking about how can we revise rules and regulations for future bridge tournaments and our future business plans? That's where I'm having trouble. Some of what you described arguably could fit the ISRs, and some of what you described, it's less clear that it does. So when you say things like they were responsible for figuring out what the rules would be, sort of how we're going to structure the bridge tournaments we put on, I can see how that's much more management-like. But then some of what you described, working with other customers, advising them, make you feel comfortable, we like you, sounds a little bit like what they're describing the ISRs do. So how do we... I think the unitil relational analysis is what lets us distinguish these two. Because in the context of the bridge league, the core productive function there was refereeing bridge tournaments. When you're talking to the sponsors of the tournament about larger customer service issues and maybe like these more customer satisfaction type issues, that is completely ancillary to the productive work of refereeing a bridge game. In contrast, here, the inside sales representatives... But there was that second tier that was also non-exempt. Right. And they did some stuff beyond just refereeing the bridge games. Right. They wrote the rules for that specific bridge tournament, and they supervised the other referees at that bridge tournament. But all of their work was focused towards putting on that bridge tournament. I think the analogy here would be all of the work of an inside sales representative in doing research and making proposals for customers is towards getting a particular customer to complete... Is that exactly right? I guess that's the question is whether some of the ISRs, are they always working on their own sale? Or are they working on general marketing for sales for FWWeb? In general, to sort of diffuse good customer relations generally, because then I'm having a little bit of trouble distinguishing it from some... You see what I'm saying? Some of the work of the people in the bridge tournaments that we regarded as exempt. I understand your question, Your Honor. And there's no evidence in the record that would support a fact finder to conclude that, you know, the ISRs were engaged in this more kind of generalized management stuff, unconnected from sales. Unconnected from their own sales? Unconnected from their own sales. I think if you look at the kind of the three categories that are identified in Web Spree... Can I just ask from the Labor Secretary's point of view, if there were evidence in the record of them doing customer relations aimed at sales, generating sales, but unrelated to their own sales, would that tend towards the falling into the exempt category? It would be a harder case. I think you would need to look at all the facts there, because when you start changing the relationship of kind of the sales operation, and how the different employees interact with each other, that would really change the analysis of the ultimate question, which is, you know, what is the character of the employee's job as a whole, and is that character one that directly relates to management or general business operations, or is it one that relates to kind of core production? Doesn't the rule deal with the fact that some people can do several things, one of which might tend towards non-exempt, and one which would tend towards exempt? Doesn't it have a primary duty test that we use to make that differentiation? It does. The regulations give various examples and factors you consider when determining what the primary duty is, but it makes clear that the primary duty is the main or most important thing that an employee is tasked with, and you have to look at all of the facts with a major emphasis on the character of the job as a whole. Because as you went up the pyramid, basically the primary duties were moving incrementally away from their core function towards more managerial type. Exactly. And that's what I'm trying to grasp from you. Are you saying that on this record, there's no evidence of the ISRs doing anything unrelated to their own personal sales? Or are you saying that there is evidence of them doing things unrelated to their own personal sales, but the primary duty analysis would suggest that's not their primary duty? The direct answer to your question is the latter, but what is in the record? The latter? Yeah, and let me explain. What is in the record about the ISRs doing work unrelated to their own personal sales is very thin. It's essentially two things, which I think fall under what the web brief calls the internal advising function, which are basically when outside sales employees working with their customers might have questions that ISRs might have information about, they provide information to these outside sales persons. And then the ISRs also kind of report back to management with what they see going on in the market. The web acknowledges in response to requests for admissions that the ISRs play no role in making policy decisions or management decisions. They provide information to other employees that might do their own tasks with that. But I think that thin bit of the record is not enough to then conclude that the essential character of their job is this management, as opposed to sales. And I guess I just want to make sure I understand. In Marcus, for the group that we considered to be exempt, which is the, what was the name? Field supervisors and area managers. Yeah, field supervisors and area managers. If I recall the way we explained it there, we described them as doing some of what you just described. They were also responsible for making policy decisions and management decisions. We described them as doing some of what you just described. Correct. But I don't recall us saying, but don't worry about that stuff because it wasn't their primary duty. We seemed to describe some of that stuff along with the other stuff as all combined, showing they were exempt. Is that accurate? I think it is accurate, but it's in the context of a relational analysis where the business of the bridge league is so different from the business of the FW web company that where some of the duties of the field supervisor and area managers may be ancillary to production work and therefore kind of inform what the primary duty that they have. I guess I'm trying to press you on this because here the relevant thing would be at the service, not production, right? And the service would be yours trying to say their individual sales. Right. So you see what I'm saying? I'm just having trouble figuring out exactly how to draw that analogy then. Sure. So I guess another way to put it would be to look at how for the national tournament directors and the associate national tournament directors, these employees were doing where they were making some staffing, supervision responsibilities. They had some regulation responsibilities. But all those responsibilities directly went towards the productive work of putting on a tournament. Here the kind of market advising work and working with customers, providing information, doing research, all that goes towards the sales. Because the reason that the ISR is working with particular customers, they're trying to turn a quote into a completed sale, and that is what informs their evaluation, the compensation decisions, and is kind of the core piece of the job description and job postings. And last time, just when you say sales, their own sales or sales for the company or it doesn't matter? So the vast majority of what they do, the skills that Web looks for when they hire inside sales representatives, the work that they're evaluated on and paid for is their own particular sales. And to the secretary, that matters. Yes, it does. And that what is in the record in terms of, again, what Web calls internal advisement, there's no indication that they're spending 50% or 95% of their time providing information to other salespeople or managers. Their passing references in the record to it is not built out. That is the essential character of their job, especially where the skills that they're hired for, the skills they're evaluated on, and what they spend their time doing is working with particular customers on particular sales and helping those customers pick which products to buy. The other thing I want to note is that the Web brief's reading of the Marcus decision recreates an error that this court identified in Unitil, of simply analogizing the facts of our present case to examples from other cases without a relational analysis in Unitil. The lower court had said, well, these employees, they do things that look like compliance and look like health and safety, and the regulations say compliance, health, and safety is exempt, therefore these employees are exempt. The Unitil court found that to be an error because you had to look at what the actual employees were doing for the relevant company. Here, to say that, well, in Marcus there was customer satisfaction and long-term customer management, and therefore everyone who does that is an exempt administrator, you know, neglects the context of, it neglects the fact-intensive analysis of what is it that these employees do for this company and what is the character of that job. And I think taking the Web's brief at its word, saying, well, in Marcus it was 25% of their time spent doing customer satisfaction, here the ISRs spend 95% of their time doing customer satisfaction, therefore we win even more so, that type of analysis would exempt basically every salesperson from the FLSA's overtime protection because any salesperson wants to make their customers happy, wants to make return customers, and any company that learned their blind salespeople were making customers unhappy and disrupting long-term relationships, would believe that those employees are not doing their job, not fulfilling their essential duties. So the Web brief paints who brought a brush when looking at the Marcus decision, and if there are no further questions, I rest on the brief and ask this court to affirm. Thank you. Thank you so much. Thank you, counsel. At this time, counsel for the appellant has a three-minute rebuttal. Thank you. Your Honor, first, I think the error that the Unitel court recognized was that the court shouldn't have decided it in the lower court on the cold record, but whereas here there are conflicting facts, it's deserving of a trial, and that's precisely what just happened. My colleague and I have a very different view of the record, and first, let me say, I don't think it's correct to say there is zero evidence in the record of the ISRs assisting other people. I may be wrong, but I believe it is Mr. Varney, the marine engineer, who attested that he supervised at least three to four other people and that he routinely did as part of his job, aiding other ISRs in their sales on these unique and technical issues. Each of those declarations began that their purpose was to support the outside sales and to ensure high-level customer experience. You asked about the Marcus case and what were the tasks that this court identified would qualify as non-exempt, and one of them was, quote, high-level customer service-oriented responsibilities, and that's also the Cash case, where Mr. Cash, his primary role was to ensure and follow up with customers, about whether they had received their product, whether they were happy with their product. That is also what these individuals do, and so, again... Do you want to just address this issue of for their own sales versus for other sales of the company? You're asking me? Yeah. I'm sorry, repeat the question. The distinction between this activity being done for their own sales versus for other sales by the company. I think that's a misnomer for their own sales. They are company sales, and the company's customers have an outside sales representative and an inside sales representative. The customers are supported. The person who goes and finds customers and who manages the relationship is the outside salesperson. The person who provides the technical support for some of these customers who have been around for 30 years, most certainly they develop relationships with them and become that technical support for the outside salesperson when these complex jobs arise, but to the extent they're coming in, some of these customers might have a smaller project where they're just buying small amounts. They go to the counter or they go to the website. Not every project involves the use of the inside sales rep. That is a concierge service for the company's customers that support the company's sales. They do not earn commissions in the sense that your car dealership does. They earn very high salaries, hundreds of thousands of dollars, and I'm certain they earn bonuses when they get good reviews and have high-quality performance, but it is not a piece rate, a commission rate, or anything of the sort. And again, Your Honor, I believe that this court has routinely recognized that simply advancing the sales of the company is not a disqualifier from being exempt. That is part of the company's operations. You can be in a sales function. May I finish, Your Honor? You can be in a sales function and still be exempt, and I would point the court to Hines. Those are the individuals who were banquet salespeople. They sold. Their job was to source and land sales for banquets and then also make sure that people had a wonderful experience in their event so they would tell other people and come back and return. And the court said that does relate to operations of the business. Thank you. Thank you, Your Honor. Thank you, counsel. That concludes argument in this case.